UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY E. HOLLINS,<br><br>                        Plaintiff,<br>v.<br><br>PRUDENTIAL INSURANCE COMPANY of AMERICA,<br><br>                        Defendant. | Civil Action No. 1:16-cv-7818 |

COMPLAINT

Introduction

1. This complaint seeks legal and equitable damages arising from and relating to disability benefits payable under an insurance policy issued by Defendant.

2. The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein. To avoid the unnecessary repetition in each section, Plaintiff affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3. The factual allegations found in this complaint are not exhaustive, and are presented throughout this complaint so as to provide the requisite notice of the basis for Plaintiff's allegations.

Jurisdiction & Venue

4. This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

5. Venue is appropriate in the United States District Court for the Northern District of Illinois pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391. Defendant can be found in

this district.  Further, Plaintiff resides in this District.

Parties

6. Plaintiff Mary E. Hollins ("Ms. Hollins") is a resident of Oak Forest, Illinois, and an insured under the insurance policy at issue in this lawsuit.

7. Defendant Prudential Insurance Company of America ("Prudential") is the underwriter and insurer of the long term disability insurance policy at issue in this lawsuit.  At all relevant times, Prudential was doing business within the State of Illinois.

Facts

8. Ms. Hollins was employed by JP Morgan Chase ("Chase") and covered by a long term disability insurance policy ("Policy") issued to Chase for the benefit of its employees.

9. The Policy insured 60% of Ms. Hollins' monthly earnings with monthly disability benefits beginning on the 182nd day of her disability.

10. Ms. Hollins' monthly earnings were $6,564, with her resulting monthly disability benefit equal to $3,938.

11. The Policy defined disability based on Ms. Hollins' job duties at Chase, commonly referred to as own occupation.  The specific language of the Policy is as follows:

> How Does Prudential Define Disability?
>
> You are disabled when Prudential determines that:
>
> - you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury,* and
> - you are under the *regular care* of a *doctor,* and
> - you have a 20°/o or more loss in your *monthly earnings* due to that sickness or injury.

12. The maximum period for disability benefits is age 65.

13. In April 2014, Ms. Hollins ceased work because of limitations caused by her disabling conditions and corresponding treatment regimen.  At that time, she was no longer able to earn more than 80% of her monthly earnings in her job with Chase.

14. Subsequent to April 2014, Ms. Hollins' physical limitations have not improved

and have worsened. She has remained continuously disabled and unable to perform on a full time basis the duties of her job with Chase.

15. In accordance with the terms of the Policy, Ms. Hollins submitted her claim for long term disability benefits which Prudential granted by letter dated December 8, 2014.

16. Prudential confirmed that, just as she was totally disabled under a separate short-term disability insurance policy with a similar "own occupation" definition of disability as the Policy, Ms. Hollins remained disabled under the Policy.

17. Prudential commenced payment of Ms. Hollins' Policy disability benefits effective October 25, 2014.

18. By letter dated June 4, 2015, Prudential reversed its prior findings, decided that Ms. Hollins was no longer disabled as of April 30, 2015, and terminated payment of her Policy disability benefits.

19. In terminating Ms. Hollins' disability benefits, Prudential did not consult with a qualified "health care professional" as required by the plan terms and by the Department of Labor claim regulations.

20. Prudential also did not demonstrate any improvement in, or resolution of, Ms. Hollins' disabling physical limitations.

21. Ms. Hollins' appealed Prudential's decision to terminate her disability benefits.

22. By letter dated August 13, 2015, Prudential denied Ms. Hollins' appeal relying on the medical opinion of its non-examining record reviewed Neal C. Small.

23. The Department of Labor claim regulations required that if Prudential disagreed with her treating providers' opinions, prior to terminating or denying a claim, Prudential should consult with a health care professional. A health care professional is defined as "a physician or other health care professional licensed, accredited, or certified to perform specified health services consistent with State law."

24. As with the Department of Labor claim regulations, Prudential's own internal claims practices applicable to the Policy required it to consult with "a health care professional

who … has appropriate training and experience in the field of medicine involved in the medical judgment."

25. The Policy further limited Prudential's use of a health care professional to a Doctor, defined as:

> ***Doctor*** means a person who is performing tasks that are within the limits of his or her medical license; and
>
> - is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
> - has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
> - is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

26. Prudential did not consult with a licensed Doctor during the claims process. Its in-house employees were not licensed to practice medicine and were not otherwise accredited or certified to address Ms. Hollins' debilitating medical conditions.

27. Prudential also did not consult with a licensed Doctor during the appeals process.

28. Neal C. Small is not licensed to practice medicine in the State of Illinois and, as such, provided medical opinions beyond the limits of his license.

29. The Policy defines the proof necessary for Ms. Hollins to receive disability income benefits as follows:

> Your proof of claim, provided at your expense, must show:
>
> - That you are under the ***regular care*** of a ***doctor***.
> - Appropriate documentation of your monthly earnings.
> - The date your disability began.
> - Appropriate documentation of the disabling disorder.
> - The extent of your disability including restrictions and limitations preventing you from performing your regular occupation or any gainful occupation.
> - The name and address of any hospital or institution where you received treatment, including all attending doctors.

- The name and address of any doctor you have seen.

30. As evidenced by Prudential's initial decision finding her disabled under the Policy terms, Ms. Hollins provided the required "proof of your claim."

31. To the extent Prudential disagreed with or refused to accept her supporting proof (i.e. her medical proof), Prudential was limited to obtaining a physical examination from a doctor.

> … we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations.

32. Prudential did not obtain an actual examination of Ms. Hollins as required by the Policy, but instead relied solely on a record review from Neal C. Small who did not satisfy the Policy's definition for doctor.

33. Prudential was not free to disregard Ms. Hollins' objective medical findings. Because Prudential did not examine Ms. Hollins, it cannot now dispute the objective findings of her treating and examining physicians.

34. Despite terminating Ms. Hollins' disability benefits in April 2015, Prudential continued to argue to the Social Security Administration (via its agent Allsup Inc.) that Ms. Hollins was disabled not only from her own occupation at Chase but also from any gainful occupation.

35. On April 10, 2015, Prudential forwarded to Allsup the very same medical records it relied on to terminate Ms. Hollins' disability benefits, for the purpose of supporting the Social Security disability claim (again, disabled from any gainful occupation).

36. On August 11, 2015, Prudential again forwarded to Allsup additional medical records to support the Social Security disability claim. Further, that same day, Prudential had Allsup appeal the Social Security Administration's denial of the disability claim it submitted on Ms. Hollins' behalf.

37. Despite its representations to the Social Security Administration that Ms. Hollins was totally disabled from any gainful occupation, not just her own occupation at Chase,

Prudential failed to address or to explain its inconsistent position in its claims correspondence with Ms. Hollins. The termination and appeal denial letters made no mention of Prudential's disability representations before the Social Security Administration.

38. Ms. Hollins met and continues to meet the requirements of the Policy necessary to continue receiving long term disability benefits

39. Ms. Hollins has exhausted her administrative remedies.

40. Ms. Hollins' complaint is timely and is not otherwise time barred.

41. Prudential's claims personnel are trained to make a reasonable decision, not an accurate decision, with a focus on returning an insured to work as opposed to considering their physical limitations and restrictions in the context of their own occupation.

42. Prudential's required and stated philosophy for its claims personnel is that "disability is the failure to adapt", as opposed to defining disability in accordance with the terms of the Policy.

43. At all times relative hereto, Prudential has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Ms. Hollins are paid from Prudential's own assets – a liability of over $780,000.

44. Prudential's corporate culture pressures claims personnel to deny claims in order to reduce the amount of monthly benefits paid. Employees who save Prudential money by terminating or denying claims are more likely to be rewarded with bonuses, promotions, and favorable employment reviews as compared with those who do not. By way of example, Prudential's claims personnel receive annual bonuses based on their meeting Prudential internal profitability targets and based on their performance evaluations.

<u>Claims</u>

<u>Breach of Contract</u>

45. The long term disability insurance policy is a written contract.

46. Prudential breached the terms of the contract. By way of example, and not an exhaustive list, Prudential failed to provide the respective policy disability benefits and failed to comply with the policy requirements concerning the use of a "doctor".

47. Prudential's contractual breaches have resulted in damage to Ms. Hollins, not only in the loss of disability benefits, but also in her loss of earnings on the unpaid benefits, her loss of opportunity, and her attorneys' fees and costs incurred as a result of Prudential's improper actions.

48. 29 U.S.C. §§1132(a) is the enforcement mechanism permitting Ms. Hollins to enforce the contractual terms of the insurance policies, to obtain past benefits, to receive reinstatement for payment of her disability benefits, to obtain declaratory relief, and to obtain other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

### Attorneys' Fees & Costs

49. As a result of Prudential's conduct, Ms. Hollins has incurred attorneys' fees and costs.

50. 29 U.S.C. §1132(g) is the enforcement mechanism permitting Ms. Hollins to recover her reasonable attorneys' fees and costs.

### Prayer for Relief

51. Ms. Hollins requests the Court enter judgment in her favor and against Prudential on all claims asserted herein.

52. Ms. Hollins requests the Court award her reasonable attorneys' fees and costs.

53. Ms. Hollins requests the Court award pre- and post-judgment interest at the greater of the prime rate or the rate earned by Prudential on the unpaid disability insurance benefits.

54. Ms. Hollins requests the Court award all other legal or equitable relief to which she may be entitled.

55.     Ms. Hollins requests leave to amend the complaint as needed.

---

Date: August 3, 2016

Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
*m.grabhorn@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

Mark D. DeBofsky
*mdebofsky@debofsky.com*
DeBofsky & Associates PC
200 W. Madison St., Ste. 2670
Chicago, Illinois 60606
p: (312) 235-4880
f: (312) 929-0309

*Counsel for Plaintiff*